(10 App. Div. 56.)

ALFRED SHRIMPTON & SONS, Limited, v. ESCHWEGE.

(Supreme Court, Appellate Division, First Department. November 13, 1896.)

CONTRACTS—FRAUD IN PROCUREMENT—ESTOPPEL TO CLAIM.

Plaintiff's agent procured from defendant an order for one great gross of pins, with an advertisement to be printed on each paper. Plaintiff wrote to defendant, acknowledging order for "one great gross of pins," and inclosed a copy of the proposed advertisement, with request to "check carefully, * * * making any desired changes." Defendant replied that everything was correct. *Held*, that defendant was estopped to claim that the order was procured by fraud, under the belief that it was for one gross. O'Brien and Patterson, JJ., dissenting.

Appeal from trial term, New York county.

Action by Alfred Shrimpton & Sons, Limited, against Simon Eschwege, for the proceeds of goods sold. A judgment in favor of plaintiffs was entered on a verdict directed by the court, and defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Edward W. S. Johnston, for appellant.
George C. Coffin, for respondents.

VAN BRUNT, P. J.    This action was brought to recover for goods, wares, and merchandise, consisting of "one great gross of pins," with advertisements attached.    The defendant, for answer, denied the sale and delivery of the goods, and alleged that the order for one great gross of pins was obtained by the agent of the plaintiffs through fraud or fraudulent concealment and misrepresentation.    The question involved in the trial of the case was as to whether the defendant had ordered one gross of pins, or one great gross of pins.    It appears that an order for one great gross of pins was signed by the defendant, and given to the agent of the plaintiffs, on or about the 14th of February, 1893; that he turned in the order to the plaintiffs, who, upon the 17th of February, mailed to the defendant a letter in which they acknowledged the receipt of his order given to their salesman for one great gross of pins, to be put up in the manner described in said letter as soon as they could prepare the goods, with the defendant's name and special advertising matter printed thereon, and then follows the printed matter which was to go on the papers in which the pins were to be put up.    The letter concludes:    "Please check this all over carefully, making any changes or corrections you desire, and, if O. K., please sign and return to us by first mail in the inclosed stamped envelope, and we will proceed with the order."    At the bottom of this letter the defendant signed the following statement:    "We have checked this all over carefully, and find it to be correct in every particular.    Dated February 23, 1893."    This was mailed to the plaintiffs, who thereupon proceeded to complete the goods necessary for the order, and shipped the same after they had been prepared for delivery, to the defendant, who refused to receive the same.    The evidence upon the part of the agent of the plaintiffs was that there was a conversation between himself and the defendant as to whether one gross of pins or one great gross should be ordered.    The defendant objected at first to one great gross, but, when he was told that the plaintiffs would not print his advertising matter upon a smaller order, he finally consented, and gave the order for one great gross.    The defendant insisted that the conversation was as to one gross or half a gross; that he only wanted to order half a gross; and that, upon being told that they would not fill an order except for a gross, he presumed he was signing an order for a gross.    A saleswoman of the defendant, of the name of Mattie Goose, corroborated him to a slight extent.    She did not hear the whole of the conversation, but testified that there was a conversation between the defendant and the plaintiffs' salesman as to one gross or half a gross.    She did not see the order signed or witness the circumstances under which it was done.

Upon the conclusion of the evidence, the court directed a verdict for the plaintiffs, and in this, I think, there was no error.    It appears from the evidence that, after receipt of the order by the plaintiffs, they sent to the defendant a statement of what the order was, before they proceeded to complete the manufacture of the goods, which goods were to be put up in a special way, which could be used for no person except the defendant.    The defendant replied that the order was correct in every particular, and they thereupon went on and manufactured the goods.    It seems to me that it is too late now for the de-

fendant to say that he did not read the order. Before he approved of it, and stated it to be correct in every particular, he was bound to read it; and, if he did not, the plaintiffs cannot be called upon to sustain the loss occasioned by his negligence. Where the defendant represents that he has seen, and the party acts upon the faith of his having seen, he cannot be heard afterwards to say, "Although I said I saw I did not." It would certainly put a stop to all business transactions if, after the delivery of the ratification over one's own signature of an order to which his attention is especially directed, a seller could not rely upon the representations of a purchaser that the order was correct in every particular.

The judgment should be affirmed, with costs.

INGRAHAM, J., concurs. WILLIAMS, J., concurs in result.

O'BRIEN, J., (dissenting). This action was brought to recover the agreed price of one "great gross paper of pins," alleged to have been sold and delivered to the defendant. The evidence shows that the defendant signed an order for the pins, which was on a printed form, and all of it, with the exception of the name of the agent and the date and the word "one" before the words "great gross," and the advertisement of the defendant, was in print. The president of the company, on receiving the order from the agent, wrote to the defendant, stating its receipt, sending him a copy of the defendant's advertisement to be printed on the goods, and requested him to check it off, make any changes or corrections he desired, and, if O. K., to sign and return. This the defendant signed, over a statement that he had checked it all off carefully, and found it to be correct in every particular. The defense was that the defendant had been fraudulently induced to sign the order, his testimony showing that the agent offered him pins, and urged him to purchase a gross, and not a great gross, which was 12 times as much, which latter is the amount the plaintiff claims to have sold. The defendant testified that he told the agent he could not use even a gross, and wanted a half gross, but that, the agent insisting that a gross was the smallest quantity that could be ordered, he finally agreed to purchase one gross, and that nothing was said during the entire conversation about one great gross of pins; that the agent placed the order before him, and pointed to the reading matter, but he did not read the paper through, but wrote his name and address; and that the agent wrote the word "one" before the printed words "great gross" on the order. A saleswoman in the defendant's employ claimed to have overheard the conversation, and testified that it related to a gross of pins, and not a great gross. Upon the cross-examination of the president of the plaintiff, and by other witnesses, it was made to appear that similar mistakes had occurred between the plaintiff and other customers, which had been the subject of several lawsuits.

At the close of the case, the learned trial judge directed a verdict for the plaintiff, it appearing that the paper was signed by an intelligent man, who could read and write, without any inducement on the part of the plaintiff or its salesman, or any representation that was

misleading; that fraud could not be predicated upon a transaction like that disclosed by the evidence; that, after the order was given, the defendant ratified the transaction by answering the communication sent to him by plaintiffs' president, which contained a copy of the order for one great gross, and by signing the statement, "I have checked this all over carefully, and find it to be correct in every particular"; and that it was only after that that the plaintiff went ahead and filled the order and shipped the goods.    Commenting on these facts, the learned trial judge said:

"Under these circumstances, it seems to me that there is no room for inferring that there was any overreaching of the defendant, or any attempt to deceive him in any respect. On the contrary, there was an effort to notify him expressly of what he had agreed to, and it was for him then, in the exercise of ordinary prudence, to have protected himself if he had been misunderstood, and have prevented the plaintiff from going on to fill the order, the plaintiff having received the order through one of their salesmen, and taking the precaution to repeat it back to the defendant. There were no misrepresentations to induce him to acknowledge the correctness of the order as stated in the second writing."

The appellant contends that this direction was wrong, and that, upon the evidence, it was a question for the jury as to whether or not the defendant was overreached.    There can be no question that the plaintiff's case was very strongly intrenched by the second paper which the defendant signed and returned to the plaintiff.    Were it not for this, it would have been clearly a question for the jury; and the point remaining for our consideration is:    Did the signing of the second paper make the evidence so preponderating in plaintiff's favor that it was proper to direct a verdict?    Or put it in another form:    Had the question been submitted to the jury, had they decided in defendant's favor, would the verdict have been set aside as against the weight of evidence?

This question was considered in the Michigan courts in an action brought by this plaintiff against one Rosenbaum (63 N. W. 1011). There, as here, the defendant received from the plaintiff a letter acknowledging receipt of the order for three great gross, and with proof of the defendant's advertisement, and asking the defendant to check it all off, and, if O. K., to sign and return the letter.    The defendant placed his O. K. after the advertisement, signed the letter, and returned it.    The defendant testified that he intended that his order should be only for three gross, and that, in signing the letter, he paid no attention to the quantity stated therein, as he thought his approval only to the advertisement was asked.    The court says:

"It is urged that this case is distinguishable from the Netzorg Case [62 N. W. 343], in that here a confirmatory order was given. It was entirely proper to make the explanation of the circumstances under which this order was obtained. Both papers related to the same transaction. If the order was obtained through fraud, the defendant would be bound to repudiate it when discovered, and not before. The transaction was tainted by the fraud in the procurement of the original order, and the procurement of the confirmatory letter did not purge the transaction of the fraud. The testimony tending to show a similar transaction with others was admissible as bearing upon the question of intent."

As will be seen, upon evidence like that adduced in this case, the defendant obtained a judgment, which was affirmed upon appeal. We agree with the reasoning in that case. The confirmatory letter was part of the same transaction. If, by fraudulent means, the defendant was induced to enter into the contract, the fact that he was afforded means of discovering the fraud, and did not discover it, cannot take away his right to rescind when he did discover it. The most that can be predicated of his failure to note that the confirmatory letter spoke of a "great gross" is that it was a careless and negligent way of conducting business; and this would be a circumstance for the consideration of the jury, militating against the probability of the defense. Still, if the original transaction was tainted with fraud, and the confirmatory letter was but a step in the transaction, there is nothing, barring an estoppel, which should legally prevent a person, even though negligent and careless, from invoking the rule that he is protected against fraudulent acts upon the part of the person with whom he is dealing. We do not mean to infer that the testimony upon the question of fraud is either conclusive or satisfactory, our province being merely to determine whether there was sufficient evidence to go to the jury upon the question.

That there was no estoppel, we think, is clear. An estoppel could only be based upon the fact that the company, after the confirmatory letter, went on and manufactured, relying on the acts of the defendant. It has been held, however, that, "in order to create an estoppel in pais, it must appear that the party asserting the estoppel has been induced by the acts or declarations of the party sought to be estopped to believe the existence of the facts to which the estoppel relates, and that he has in good faith acted upon such belief." Lawrence v. Brown, 5 N. Y. 394. See, also, Bridger v. Goldsmith, 143 N. Y. 424, 38 N. E. 458. "The doctrine of estoppel in pais is founded upon equitable principles, and is applied to prevent fraud and injustice. It would be a very singular and extraordinary application of the doctrine to apply it for the purpose of preventing a party from alleging an innocent mistake. I cannot find that a party has ever been estopped by a mistake." Lawrence v. Bank, 54 N. Y. 436. "The doctrine of estoppel is applied to promote justice and fair dealing, never to aid a fraudulent purpose." Royce v. Watrous, 73 N. Y. 597. If the defendant's story is to be credited, that he was induced by the fraudulent conduct of the plaintiff's agent to sign the contract, the confirmatory letter, as said, being part of the same transaction, does not present features which would prevent the defendant from alleging the fraud, and proving it if he could.

We think, therefore, that the direction of a verdict was erroneous, and that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON, J., concurs.